Adelard Bouchard
vs.                    Law No. 87887.
James W. Quinn, C. T.

January 18, 1933.

CHURCHILL, J. Heard on motion for a new trial filed by the defendant after a verdict for the plaintiff for $2500 in an action of negligence.

The plaintiff testified that on the evening of October 9, 1931, he stumbled over and fell against the stump of a tree standing in the travelled portion of the sidewalk of Cass avenue in the City of Woonsocket.

There is no denial of the fact that for some time prior to the night of the accident this stump had been left standing in the sidewalk. It was 2½ feet high and about 2 feet in diameter at its base at the level of the sidewalk. The City admitted at the hearing on the motion for a new trial that it was negligent in allowing the stump to remain in the sidewalk but contested the claim of the plaintiff that he stumbled against the stump, and also took the position that, in any event, the plaintiff was guilty of contributory negligence.

Cass avenue runs east and west, the stump being located on the northerly sidewalk with its center somewhat nearer the curb than the center of the sidewalk. Hebert avenue runs northerly from Cass avenue some 85 feet to the west of the location of the stump. At the corner of Hebert and Cass avenues, about 120 feet away from the stump, a street light was located. This light was somewhat shaded by a tree which stood to the east of the stump on Cass avenue. About 95 feet distant to the east was a gasoline station equipped with pumps with lights over the pumps, as well as an illuminated sign located somewhat nearer the stump.

The plaintiff had lived on Hebert avenue since August, 1931. He frequently went to the gasoline station but testified he used a back way located in the rear of the houses fronting on Cass avenue. He stated that he went to the gasoline station on the evening of October 9, 1931, by the back way; stopped at the gasoline station a very short period of time and then went to a store on the opposite side of Cass avenue, purchased some cigarettes there, then started for home, changed his mind, crossed Cass avenue at a point 25 feet from the corner of Hebert and Cass avenues, then turned to his right to go down Cass avenue to the gasoline station. He testified that he did not know of the presence of the stump and, while walking along the street in the darkness, struck his foot against what was termed a **flange** of the stump, that is, a projection on the inner side of the stump caused by

a root; that when he stumbled he was thrown against the stump and, as he stated, finally fell on the ground between the stump and the curb. He illustrated to the jury how he struck the stump and the manner of his fall.

The defendant claims that it was impossible for the plaintiff to have received the injury to his right chest which he did receive and to have fallen as he testified he fell, and argues that what in point of fact actually happened was that the plaintiff tripped over the curbstone and fell against the stump.

There was no direct testimony in the record to support the theory that he tripped over the curbstone.

Just how a man would fall when precipitated against a tree stump 2½ feet high is a matter which contains too many variable factors to warrant this Court in ruling that the verdict is against the weight of the evidence in this respect, or that the jury as reasonable men could not have found that the accident happened substantially as the plaintiff claimed.

The defendant next argues that the plaintiff was guilty of contributory negligence and that the preponderating amount of the evidence shows that the plaintiff knew of the existence of the stump and its location. It bases this claim on the fact that the plaintiff had lived in the neighborhood since August, 1931, had passed up and down Cass avenue to his work at Uxbridge and by the place where the stump was located, and that on his numerous visits to the gasoline station, and on other occasions, had passed in close proximity to the scene of the accident.

Can it be said that plaintiff, from the testimony, had such exact knowledge of the location of the stump that he can be declared guilty of contributory negligence notwithstanding a jury verdict in his favor?

His explanation of his habitual use of the back way to the gasoline station has been pointed out. In going to and from his work at Uxbridge, he used an automobile. Whether or not a man, driving down a street daily for some months in an automobile past the plant where this stump was located, would obtain sufficient knowledge of the location of the stump to fix him with notice of the danger of walking in the darkness of the night on the sidewalk was a matter for the jury to decide, and they might well take the view that a person driving a car on a city street, with his attention necessarily directed to the front, might easily fail to notice the existence of the stump, or at least its location on Cass avenue between Hebert avenue and the gasoline station; and the same is true of his knowledge gained by passing along Cass avenue on other occasions. He was away during the day, and at night, according to his story, he had little occasion to use the northerly side of Cass avenue between Hebert avenue and the location of the stump.

The testimony is squarely conflicting as to the visibility of the stump at night under conditions similar to those which prevailed on October 9, 1931. Persons living in the house near the place where the stump was located testified that the stump could not be seen on a dark night until one was almost upon it. Witnesses called on behalf of the City testified to the opposite conclusion.

Just what degree of visibility existed in the vicinity of the stump at night, either with the lights at the gasoline station on or off, was clearly for the jury.

Under the circumstances which the jury might find to have existed, the plaintiff exercised as much care for his safety as did the plaintiff in *Gilbane* vs. *Lent*, 41 R. I. 462, or in *Fontaine* vs. *Follett*, 51 R. I. 413.

This case is within the rule of these two cases rather than that of *Nicholas* vs. *Peck*, 20 R. I. 533.

It was, on the testimony, squarely a question of fact for the jury as to the degree of knowledge which the plaintiff possessed and also a fair question for the jury as to whether or not, under all the circumstances, the plaintiff was in the exercise of due care at the time of the accident.

The City also takes the point that the verdict is excessive.

The plaintiff was a man about 45 years old and at the time of the accident was working at Uxbridge, Mass., as a loom fixer. He was earning from $35 to $37 a week, and the medical testimony was to the effect that his injuries were sufficient to keep him from his employment for at least a year. He received an injury to his right chest, involving the breaking or rupturing of ligaments between the ribs. He testified that twice after the accident he endeavored to resume his occupation but was unable to do so. His bill for physician's services amounted to $59.

Taking into consideration the medical testimony in the case, which the jury was warranted in believing, the loss of wages incurred plus the pain and suffering endured, the Court is of the opinion that the damages are not excessive.

The motion for a new trial is hereby denied.

For plaintiff: John R. Higgins.

For defendant: John J. Mee.